You may proceed. Good morning, Your Honors. Ms. Baranetsky, on behalf of Appellants, I'd like to reserve two minutes of my time. How much? In 1968, Congress struck a balance in Title III between privacy, law enforcement, and government accountability. In the statute, where it stated that wiretap applications and orders shall be disclosed only upon a showing of a good cause, this standard shows that Congress did not intend for blanket secrecy of all wiretaps. Yet, the government's position advocates for essentially that. It dismisses Appellants' argument as mere need for curiosity. We have readily met the good cause standard, and the government has not identified any specific privacy or law enforcement concerns. So sealing in this case would essentially result in permanent secrecy, which goes against the statute, the First Amendment, and common law background principles. Why does it go against the statute? The statute, you know, says that they shall be sealed by the judge, and that they can be disclosed only upon a showing of good cause. So you start with the fact that they shall be sealed, and then they shall be disclosed only upon a showing. It sounds like we start with sealing, and then unless it's shown otherwise, they stay sealed. That's right, Your Honor. There is interest in privacy and law enforcement that make the sealing provisions very strong, but there is this provision under 2518B that says that there shall be released only upon a showing of good cause. And good cause simply means need. This is informed, obviously, by the background... No, it doesn't just... It means a need that outweighs the countervailing considerations. That's right. There's a balancing test. It's a need considering then their countervailing privacy or law enforcement concerns here. And here, there is a unique case because there's a need. There's no access to this material. It's over 30 years old. It has great public interest involving matters of great geopolitical importance. And there's also an interest in ensuring government oversight in this case. And that is also not outweighed by any privacy or law enforcement concerns. So first turning to the law enforcement, as the court stated in Florea, one of the primary purposes of good cause is to consider whether there is a government investigation that will be at risk. But here, there's no pending criminal trial. There is no... There have been individuals who've been charged. The FBI has said this case is closed. There are no instruments or techniques of law enforcement that are at risk of disclosure because of the age of the case. This stands in stark contrast to multiple of the government's cases. The district court seemed most concerned about privacy interests. That's right, Your Honor. The district court waved its hand at some ideas of privacy that do obviously are at interest in these cases. But here, there are many factors why privacy interests are diminished. First being that it is decades old, three decades old. A lot of the individuals involve public figures, people who are in the Russian Federation, high up in government. They were also either indicted or are currently deceased. And the information has already been made public, some of it in the halls of Congress. So what... I mean, do you have any authority that says that the release of investigatory materials that are not public can be done, you know, decades later just because, well, enough time has passed that we shouldn't worry about airing all this laundry? Admittedly, we do not. Because these are not common cases. Most of the cases, as I stated, are ongoing cases. So in New York Times, an investigation of an ongoing prostitution ring, Blagojevich, ongoing political corruption, Qatar, the statute of limitations had not run, Ferrell, there was a lack of indictment even in that case. This is a unique case. There's the particular constellation of factors. You know, it would be... It's a different set of legal provisions. But do we release grand jury materials saying, ah, it's been 30 years, so let's just dump it all out? The government raises this argument, and I take it with a lot of seriousness. However, I think grand jury materials are distinguishable. They are protected by the Constitution. Here we have a statute at hand that specifically states a standard by which the materials can be disclosed. Moreover, the factors that the government raises on page 38 of its brief with regards to grand jury materials aren't present here. Are warrants a better analogy? I mean, before the Wiretap Act, this would have been covered by a warrant requirement, right? So how does that map onto our inquiry? Warrants may be analogized, but I think the key issue in this case is that there is a statute that directs how these materials may be disclosed. There is language in the statute explaining the good cause standard. And in fact, there are cases... Counseling is generous, I guess, for the texts that we're working with. If we take it that a good cause displaces the common law presumption in favor of access, then what do we do? What does the test look like? And why didn't the... It's, I guess, the first question, why didn't the district court apply it? The district court appears to have approached it. I think it could be seen as a kind of balancing test, but what does the test look like? What would you want us to do on remand? That's a wonderful question, Your Honor. And I think that the district court did not actually engage meaningfully with the good cause test. It did not explain what good cause even meant. It did not talk about what need has been discussed about in other cases. So for example, even in the NBC case, there the court said, despite applying a different standard, that if it were to look at the good cause standard, it would consider whether NBC had the ability to cover these topics at that time with its sources and files. Here, CIR does not have access to this material at all. So there is a need for the material. In addition... But I guess that seems to maybe double count need, usually when we see good cause, right? If we look and kind of control F through the criminal rules or the code, it's good cause usually rooted in some sort of legal interest. What you're talking about now is just the fact that they don't have another way to get at it just seems to be another way of kind of re-upping a curiosity argument. How do we land the good cause into a legal inquiry? Well, I understand that interest, but none of the case law does tie it to a legal need. And in fact, there are cases that do discuss a public interest in access. So for example, in Matter of Stephen, there the court said, quote, it agrees that all things being equal, justice is better served when information is shared, not hidden. So the move-ins are not wrong for wanting to know more. They are just too early. Indeed, it went even further. If charges are ever brought, the move-in will have more access to the information, but the investigation is ongoing. So all these cases are dealing with a specific time with the clock. And even some of these cases do foresee there is going to be a point of time. We cannot seal these cases forever. And that's perhaps... But wouldn't you concede that the statute straight out authorizes destruction of the materials after 10 years? The statute does have certain provisions where it permits potentially, but it also has... If it turned out that these records had been destroyed within 10 years, you'd have no claim, right? It's not that we wouldn't have a claim, Your Honor. It's just potentially what would be there, what would be available. And I think that the statute itself obviously is making for considerations with regards to unsealing because it itself has retention provisions, stating that the records shall not be destroyed. It also has clear memorialization provisions, stating that certain information will be in the papers, where the event is happening, what is being recorded, who is there. Okay. So back to the test. So we have, in terms of the balance with the district court, you're asserting hasn't considered. Considered privacy, you'd concede that would be part of the balance. Didn't consider your need on behalf of the public to know, that would be another part of it. Anything else in the balance? It's the fact that, Your Honor, there is a need, which the court did not consider. And the fact that there were privacy interests that have diminished over time and other factors which this circuit and other courts have stated must be considered.  So what other factors? You've contended that the law enforcement interests are weak here, but would you concede that those should be part of the inquiry? Correct. Those should also be part of the inquiry. So there is a need, and they are not outweighed by the privacy or the law enforcement concerns at issue here. And that's the good cause test you'd ask us for? And that's the good cause test. It's a balancing test, and in fact, this circuit has said in Kamakana that this has to be a flexible test. So obviously, this is not going to look the same in every single situation. But here, those are the considerations on the table, and therefore, good cause has been met. So what's at stake here? Because the provision you're relying on applies to applications and orders. Does that cover the 10-day reports? That does cover the 10-day reports. They're neither an application or an order, right? That's correct, Your Honor. But the government argues that it falls under 2517, which is fruits of wiretap. But nowhere in Section 2517 does it mention 10-day reports. Moreover, 10-day reports don't fit under that, because they, in fact, are just a method... Where's the provision that allows for the disclosure of a 10-day report? There is not an express provision, Your Honor. But even the... I thought this whole thing was based on the statute and the presumption you say, but if there's no statute that authorizes its disclosure, then how would it be released? Even the 11th Circuit, which the government concedes, has stated that the 10-day reports fall under Section 2518B. And any concerns could be addressed with... I mean, but how textually does it fit within the language that is in Subsection B? I think the notion is, Your Honor... Any applications and orders shall be disclosed only upon a showing of good cause, etc. It's not an application. It's not an order. The 11th Circuit may have said otherwise, but it's not there. Where's the language that says it can be released under that section? That word is not there. And it's also not under Section 2517. And the reasoning for why it should fall under 2518B is because it's a piece of information that was meant to convince the court and discuss whether these wiretaps should continue. So you're viewing it as a kind of interim application? That's right. And analogically, we are analogizing it essentially to an application. I'd like to note that the true potential of this harm is not finding good cause in this case, and essentially means continued indefinite sealing of wiretaps forever. I guess just to speak to... If we decided your way, would we create a split with the Second Circuit on the limitation of grieved persons? That's right. But the Second Circuit is a minority circuit position. Other courts have not agreed with it. And moreover, there's no support in the statute, in the legislative history, in the case law. The District Court properly determined that the good cause standard applied because it looked at the language of the statute. And indeed, there's an intentional omission because a grieved person was included in another portion of the statute, 251810A. And the case law even confirms this. So Kansas City Star says good cause was the only standard. Rutkitski v. Clem says the same thing. And the legislative history doesn't bear it out either because it just discusses a grieved person as someone who could seal or unseal, not that they are the only person. And also, importing this part of the statute would essentially, again, continue wholesale unsealing. And as I mentioned before, Forbes and other courts have stressed some transparency is necessary to ensure these proceedings are not closed forever. Counsel, I want to ask you a little bit more about the good cause. When does that start? When do we say, okay, we balanced it? Is it... Like in this case, okay, 30 years. I get that. But what if it's the day after the investigation concluded? What if it's the day after... Is that enough? Is it, hey, the investigation concluded, that's what we need to look at? I think this is why good cause is a balancing test that has flexibility. I cannot draw for this court right now the exact line. It certainly wouldn't be the day after. The precedent says that. In fact, maybe even a year or two later wouldn't be sufficient. It has to do, obviously, with the individuals alive. Are there any law enforcement considerations, like the statute of limitations, law enforcement techniques? This is just this unique case that really fits the test. And it wouldn't necessarily create for every single case to be released forever. To the extent that there's a concern that there would be a flood of other cases, that's very unlikely. In fact, most of these cases aren't even known about. They rarely involve public figures of this stature. And so it's a unique case. I'd like to quickly just turn to the First Amendment. Did you have a set time for rebuttal? Yes. Okay. Okay. Thank you, Your Honor. Thank you, Counsel. All right. So we'll hear from Ms. Karwandi. Good morning, Your Honors. And may it please the Court, my name is Maya Karwandi, and I represent the United States. This Court should affirm the denial of CIR's motion to unseal for three reasons. First, the District Court applied the correct legal standard, which I believe my friend concedes in her argument by acknowledging that good cause requires a need for disclosure. Second, the District Court did not abuse its discretion in finding that CIR's interest in producing a documentary about the wiretap records doesn't meet the good cause requirement and isn't sufficient to overcome the presumption of sealing. And finally, the District Court didn't err in finding that CIR does not get access to these records under the First Amendment. Well, I guess it's not a balancing if it's just enough for the District Court to find that one side of the scales is a little light, which I think is – are you contending that the District Court looked to the other side of the scale too? Your Honor, I think the District Court here was thorough. The District Court looked at the wiretap records. He looked at them in camera, found that there were ongoing privacy concerns. He considered whether redaction was an option. So this wasn't a perfunctory analysis. The Court really engaged in the records and found – What would be a situation you can think of that would fit good cause? So, Your Honor, there's examples in the case law. We see it in not just a need for disclosure, like I'm interested in the records, but a need that is consistent with the interests of justice. So, for example, the House Judiciary Committee – this is an 11th Circuit case – was investigating a sitting federal judge for impeachment proceedings. And the allegation was that the judge had tipped off targets of a wiretap that he had signed. There was good cause there to disclose the wiretap. But that was – the statute uses different terms. So interests of justice, this legislative history, Merkley suggests that maybe that's a subset of good cause. Maybe it's a different test. But interests of justice go to the aggrieved persons or the parties to the intercepted communications. Good cause is in a different part of the statute referring just generally. So those aren't the same, are they? No, Your Honor. The language is not the same. 8B refers to good cause. But in interpreting what good cause means, courts have applied a standard akin to the analysis in grand jury proceedings, for example. It requires not just a reason but a particularized showing of need, like a compelling interest that serves the interests of justice. It's a similar standard or weighing that happens in disclosure of pre-sentence reports, sort of another category of documents. Are any of those disclosure requirements tied to a statutory good cause provision? No, Your Honor. So in the 6E, the grand jury example, in 6E, the statute itself has a list of six exceptions, one of them being disclosure in context in connection with another judicial proceeding. Courts have interpreted that language in connection with another judicial proceeding. The Supreme Court has done this to require a showing of particular and compelling need. So courts can take the statutory language and then look at the statutory context, the purpose behind it, and decide what exactly the showing requires, the considerations. And in looking at that, the district court applied that test correctly here. I mean, the district court's order is kind of terse. And it does seem that under the order, it's hard to see how just sort of press interest in a particular case, even one that's 30 years old, could ever carry the day. Under the sort of analysis, well, there's privacy interests and there's still privacy interests, and just an interest in telling a story about it or learning about it is not enough. It almost seems like it's a per se rule that it's just never going to be enough. Is that right? Your Honor, I don't think it's a per se rule. It is true, Your Honor, that every case, every court that has looked at whether a newspaper's interest in publishing newsworthy wiretap records, whether that meets the good cost standard, has found that it doesn't. Could there be a case in the future? Perhaps. But the reason why is because of the way Title III is. So wiretap records are different from search warrants. We talked about, Your Honor's brought that up a little bit in the other argument. Well, not much. Can you say a little bit more? I mean, without the Wiretap Act, why aren't these equivalent to search warrant applications in Custer Battlefield and other cases we've said are subject to the common law rule? Of course, Your Honor. So wiretap records are different. So they are different in they can only be issued by a district court judge. Magistrate judges can't issue them. They have to be, and I'm just going to go through some of the differences because they are many. Yeah, I mean, how is that? So, of course, Congress had a reason to set a higher bar for wiretaps than for search warrants. But I guess I'm not clear that Congress also said that good cause allows disclosure of those applications, which is analogous to perhaps the reversal of the presumption to search warrants. I don't see why. I guess that would suggest maybe that wiretaps, because they go through even more process, because they have to meet this higher standard, we might be less worried about disclosure. I'm not sure why it helps you. So here's how wiretaps are different. Unlike search warrants, which require just a showing of probable cause, wiretaps require the government to detail in its application personal information about everyone they expect to be intercepted on the wiretap who is engaged in criminal activity. Those people may or may not ever be charged with a crime. They may or may not ever actually even be intercepted. But the application requires that detail. So higher privacy interests kind of categorically, you're suggesting. Exactly, Your Honor. And in addition, wiretaps have the necessity requirement. This is completely unique to wiretaps. It's not enough for the government to show probable cause that the wiretap will lead to evidence of crimes. The government has to show that all other reasonable, normal investigative methods were tried and failed or unlikely to succeed or too dangerous to try. That seems to cut the other way compared to a typical warrant versus a typical wiretap. In other words, it's more focused, even though it might include the names of parties who would not be included in a similar warrant application. It requires an expose of the government's investigation and techniques. Okay, so it's a law for the heightened law enforcement. Okay, so all of those things are baked in. I'm trying to figure out where. So you agree that on the balancing test then that it includes privacy, law enforcement interests, and then what we're left with, the sticky point is just what, how much cause the applicant is looking for. I mean, whether it's enough to public interest. Is that the difference? Correct, Your Honor. The question is what showing is required to overcome the presumption that Congress baked in to Title III, that these privacy interests of unindicted parties and the law enforcement interests are the sort of compelling reason to keep these records. And why aren't the interests then that are, maybe the balance comes out differently, although it's already baked in. Why aren't the interests that are on the table for disclosure of warrants, at least in the ballpark, if they're strong enough to overcome this reverse presumption, those other interests? You seem to suggest that it's just categorically out, and you point us to cases where we're not applying a good cause standard. We're applying an interest of justice standard or we're dealing with grand jury transcripts, which we've said in the First Amendment context might be different. I'm still trying to see why isn't the interest in warrants, if they're strong enough, enough in the wiretap context? So I can direct you to cases applying the good cause standard. The Kansas City Star in the Eighth Circuit, for example, a newspaper wanted access to wiretap records because they were newsworthy. They involved a public figure and they wanted more information about them to report on them. The court looked at the good cause standard there and found that it requires a need for disclosure and curiosity about the records did not meet that need. So what's the – to take you to the First Amendment point then, because we would want to hesitate before we draw a bright line against public disclosure. The First Amendment interest is something like that. Maybe – I mean curiosity is a way of saying it's not very weighty, but it's public disclosure. It's the public's right to know about what its government is doing. So doesn't – that has to count for something. Where does that factor into the test you propose? Of course it counts for something, but there are countervailing interests. Well, we've talked about – I'm sold on the countervailing interests. Tell me about what does it count for and when, because you haven't told me of any example that it counts for anything. And if that's the case, then we do – we'd like to avoid the First Amendment issues, but that does seem to present a little bit more of a free speech problem. The public interest comes into play, for example, if the wiretap records are part of suppression litigation. Those are instances where portions of the wiretap records have been made public because there's the First Amendment right of access to the court proceedings, to judicial records in that context, and the balance shifts there. In this situation where the presumption is that the records will remain under seal out of public view because they haven't been used in a court proceeding. Well, but they – I take it that the Act itself – I can't recall now whether this is in the statute. It's at least in the history – says these should be treated as if they're court records. It's probably better given the need for confidentiality that they stay at the executive branch, but they shall be treated as court records. Correct, Your Honor. I'm not disputing that they're court records, but I think there are categories of court records and court proceedings where it's been determined that they are under seal or out of public view. And to the extent there's a concern about secrecy, people who are intercepted or listed in the applications, they get noticed about the wiretap. That's not the issue. It's whether these documents are out in the public sphere being reproduced and reported on. And for certain categories of documents, wiretaps being one of them, the balance shifts and the interest in the privacy of unindicted individuals, law enforcement interests outweigh the public interest in news gathering. Categorically. And how does that not present a First Amendment question since it is exactly the public's interest that is the reason for the claim? The public's interest is not absolute. It doesn't trump all the other interests that are present. I take your argument to say that all of the other interests always trump the public's interest. No, Your Honor. I'm not saying always, but I am saying in this specific case, that's what we have here. C.A.R. has not demonstrated that their desire, that their interest in publishing a documentary on a newsworthy case overrides the continuing privacy interests of unindicted individuals listed. If you address the 10-day reports and how they fit into the statute, do you agree that they should be viewed as a species of application? No, Your Honor. I think that the 10-day reports are separate from the applications in orders. I think there is an argument that they are not subject to disclosure for that reason. They're not part of the statute. Are they a component of the process of deciding to continue the wiretap? They can be. Courts have pointed to them as discretionary. In practice, I think a majority of district courts do require the 10-day reports, but because they're discretionary, you— But if they're required and then a determination is made based on them, whether to continue them going, then maybe they are a species of application. I think they could be interpreted that way, Your Honor. In any event, I don't think the court needs to reach that issue because C.A.R. hasn't demonstrated good cause. Even assuming that they're covered. I mean, the 10-day reports, you know, have the most highlighted privacy concerns. Correct, Your Honor. And that's why the government's position is that the 10-day reports are governed by the section of Title III that applies to intercepted communications. And that has an even higher standard for disclosure. It's only to aggrieved persons. Which would suggest it's not, under the statute, an application or an order, even if it has functional similarities to such. Correct. Even if it's interpreted as part of the application in order, given that the content has intercepted communications, the government believes it should be—disclosure should be subject to the higher standard. And I think there's also a good argument that it's not part of the application and order because it's not explicitly required. In any event, I see I'm almost out of time, Your Honors. If there are any further questions, I'll answer them. And if not, we'd ask this court to affirm. Thank you, counsel. We'll hear rebuttal. Your Honors, I'd like to point to—I'd like to make two points. First, the district court did not apply the correct legal framework. The standard of review here is de novo in whether the district court applied the correct legal standard. Here, it treated disclosure as discretionary. The court in Yoshimura specifically said that that was inappropriate. It said, quote, disclosure of these documents is not a matter committed to the discretion of the district court. There is a standard. The court did not state what it was or apply it. I'd also like to note, with regards to the First Amendment, that even a mandatory statutory provision is still subject to constitutional considerations. Here, logic alone demands disclosure, and under the Ninth Circuit, that's sufficient under a Copley press. And the government has not shown a compelling reason to overcome, let alone with the specificity required. In Waller v. Georgia, the court found that suppression hearing materials could be disclosed, but that was because the government had not proffered what specific interests were at issue, whose specific interests, what parts of the hearing were actually invading those interests. Here, the state has failed to do the same. It has not met that specificity required. It didn't offer any specificity as to the privacy interests of who or how. Any privacy interests could be met with redactions also in this case, which the court did not carefully apply or consider with factual findings. And I would note that this circuit, also in ACLU case, although a summary order, did consider the ongoing nature. In Times Mirror, this court found that there was no right of access, but clearly noted, we need not and do not decide at this time the question of the First Amendment right of access to warrant materials after investigation is concluded. This leaves open the opportunity for this court to find that the materials should be disclosed under the First Amendment. All right. Thank you, counsel. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA